IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 23-2605

KENNETH MOSES,

Appellant,

v.

UNITED STATES STEEL CORP.,

Appellees.

_____

**[PROPOSED] BRIEF OF *AMICI CURIAE*
NATIONAL EMPLOYMENT LAWYERS ASSOCIATION,
WESTERN PENNSYLVANIA EMPLOYMENT LAWYERS ASSOCIATION,
AND NELA-EASTERN PENNSYLVANIA
IN SUPPORT OF REVERSAL**

_____

APPEAL FROM JUDGMENT DATED AUGUST 24, 2023
IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF PENNSYLVANIA
AT CIVIL ACTION NO. 2:20-cv-752

_____

Christine T. Elzer
Pa. I.D. No. 208157
Elzer Law Firm, LLC
960 Penn Avenue, Suite 1001
Pittsburgh, PA 15222
(412) 230-8436
celzer@elzerlaw.com

Attorney for Amici Curiae

# TABLE OF CONTENTS

Table of Citations ................................................................................................. ii

Statement of Interest ............................................................................................1

Summary of Argument..........................................................................................3

Argument...............................................................................................................5

    A. The District Court Erred in Requiring Additional Evidence of Race
       Discrimination Beyond the Prima Facie Case and Evidence of Pretext .........5

    B. The District Court Erred in Rationing Evidence Between the Prima Facie
       Case Stage and the Pretext Stage. ................................................................11

    C. The District Court Erred in Relying on the Opinions of Coworkers
       Regarding Discriminatory Motive.................................................................16

        1. An employer does not have to discriminate against all employees of a
          protected class to discriminate against a single employee...................16

        2. An individual's opinion about an employer's motive is to be given little,
          if any, weight. ......................................................................................19

Conclusion ...........................................................................................................22

# TABLE OF CITATIONS

CASES

*Abramson v. William Paterson College*, 260 F.3d 265, 283 (3d Cir.2001) ............8

*Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074 (3d Cir. 1996)........................5

*Antol v. Perry*, 82 F.3d 1291 (3d Cir. 1996)...........................................................15

*Ansell v. Green Acres Contracting Co., Inc.,* 347 F.3d 515 (3d Cir. 2003) ...........18

*Bell v. Birmingham Linen Serv.*, 715 F.2d 1552 (11th Cir.1983).............................6

*Bostock v. Clayton County, Ga.*, 140 S. Ct. 1731 (2020) ................................. 13, 14

*Burrage v. United States,* 571 U.S. 204 (2014) .....................................................13

*Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893 (3d Cir. 1987) (en banc) ................5

*City of Los Angeles, Dept. of Water and Power v. Manhart*, 435 U.S. 702 (1978) 16

*Connecticut v. Teal*, 457 U.S. 440 (1982) ..............................................................17

*Dillon v. Coles*, 746 F.2d 998 (3d Cir. 1984) ..........................................................5

*Doe v. C.A.R.S. Protection Plus*, 527 F.3d 358, 370 (3d Cir.2008)…………….…..8

*Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470 (2006) ......................................17

*Farrell v. Planters Lifesavers Co.*, 206 F.3d 271 (3d Cir. 2000) ...........................11

*Fasold v. Justice*, 409 F.3d 178 (3d Cir. 2005) ........................................................8

*Fuentes v. Perskie*, 32 F.3d 759 (3d Cir. 1994) ................................ 7, 8, 10, 12, 15

*Goosby v. Johnson & Johnson Medical Inc.*, 228 F.3d 313, 321 (3d Cir. 2000) ...17

*Jackson v. University of Pittsburgh*, 826 F.2d 230 (3d Cir. 1987)...........................5

*Jalil v. Avdel Corp.*, 873 F.2d 701 (3d Cir. 1989) ...................................................11

*Jones v. School Dist. Of Philadelphia*, 198 F.3d 403 (3d Cir. 1999) ......................19

*Lockhart v. Westinghouse Credit Corp.*, 879 F.2d 43 (3d Cir. 1989) .......................5

*Marra v. Philadelphia Housing Authority*, 497 F.3d 286 (3d Cir. 2007)...............20

*Marzano v. Computer Science Corp.*, 91 F.3d 497 (3d Cir. 1996) .........................17

*Olson v. General Elec. Astrospace*, 101 F.3d 947, 955 (3d Cir. 1996)…………...20

*Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989)...................................................6

*Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000)................ 8, 11

*Sheridan v. E.I. Dupont de Nemours & Co.*, 100 F.3d 1061 (3d Cir.1996) ..........7, 8

*United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711 (1983) ..........5

*Waldron v. SL Industries*, 56 F.3d 491 (3d Cir.1995) ..............................................7

*Weldon v. Kraft, Inc.*, 896 F.2d 793 (3d Cir. 1990)...................................................9

## STATUTORY PROVISIONS

42 U.S.C. § 1981 ........................................................................................... 3, 16

43 Pa. Stat. § 955(a) ...................................................................................... 3, 17

# I. STATEMENT OF INTEREST

The National Employment Lawyers Association (NELA) is the nation's largest professional membership organization comprised of lawyers who represent workers in labor, employment, and civil rights disputes. NELA and its 69 state and local affiliates have more than 4,000 members, all of whom have certified that at least 51 percent of their employment law practice is devoted to advocating for employees. The Western Pennsylvania Employment Lawyers Association ("WPELA") and NELA-Eastern PA ("NELA-EPa") are Pennsylvania-based affiliates of NELA. WPELA has approximately 52 members, and NELA-EPa has approximately 85 members, all of whom have certified that at least 51 percent of their employment law practice is devoted to advocating for employees in Pennsylvania.

NELA and its affiliates strive to protect the rights of their members' clients, and regularly support precedent-setting litigation affecting the rights of individuals in the workplace. Many members of NELA and its affiliates represent public employees in civil rights litigation, including, but not limited to, claims asserting race discrimination under Section 1981 of the Civil Rights Act of 1866, Title VII of the Civil Rights Act of 1964, and similar state laws. The issues presented in the instant case are likely to impact workers across Pennsylvania and throughout this Circuit. Moreover, this appeal challenges whether the District Court properly applied

the standard for a motion for summary judgment. NELA, its members, and their clients have a compelling interest in preserving the right to trial by jury when genuine disputes of material fact exist.

No person or entity other than the members of *Amici* has paid in whole or in part for the preparation of this Brief, nor has anyone else authored this Brief in whole or in part. Counsel for Appellant are members of NELA and/or WPELA, but they have not assisted in the drafting of this Brief, and were not provided a draft of the Brief before it was filed.

*Amici's* authority to file this Brief is derived from Fed. R. App. P. 29(a)(3), in that it will be filed only if the Court grants leave to file it.

## II. SUMMARY OF ARGUMENT

The district court erred in granting summary judgment to United States Steel Corp. ("USS") on Kenneth Moses's race discrimination claims under 42 U.S.C. § 1981 and the Pennsylvania Human Relations Act, 43 Pa. Stat. § 955(a). The court committed several errors that misapplied decades of precedent from this Court and the Supreme Court regarding the types of evidence sufficient to survive a motion for summary judgment in a discrimination case.

First, the district court required more of Moses beyond evidence establishing a prima facie case and evidence casting doubt on the employer's proffered reason. As this Court and the Supreme Court have repeatedly recognized, if an employee has established a prima facie case and then points to evidence that an employer's proffered reason is pretextual, a jury can infer discrimination from those facts alone. Nonetheless, the district court required "pretext plus," contrary to precedent in this Circuit.

Second, the district court rationed evidence between the prima facie case stage and the pretext stage. After first recognizing evidence of disparate treatment between Moses and similarly-situated white employees, as well as evidence of racist statements by supervisors, gave rise to an inference of race discrimination at the prima facie case stage, the district court simply ignored that evidence when assessing whether USS's proffered reason for firing Moses was pretextual. This type of slicing

and dicing of the record is contrary to this Court's repeated admonition that evidence supporting the prima facie case and evidence of pretext often overlap.

Third, the district court drew too much from the opinion of a Black coworker who did not believe he personally experienced race discrimination from Moses's supervisor, and from the statement of a white coworker who confirmed that a supervisor harassed Moses, but did not explicitly attribute that harassment to Moses's race. This Court and the Supreme Court have been clear that antidiscrimination statutes protect individuals, rather than groups, and that an employer does not need to discriminate against every member of a protected class to discriminate against a given member of that class. Moreover, the subjective opinion of a coworker about a supervisor's motive should be given little to no weight, particularly on a motion for summary judgment where the court is required to draw all inferences in the nonmovant's favor.

The errors in the district court's opinion, if left intact, have the potential of harming not just Appellant Moses, but other many workers who seek redress under federal civil rights statutes from courts in this Circuit. For the foregoing reasons, and as further set forth below, *Amici* respectfully request that the district court's grant of summary judgment be reversed.

## III. ARGUMENT

### A. The District Court Erred in Requiring Additional Evidence of Race Discrimination Beyond the Prima Facie Case and Evidence of Pretext.

Discrimination plaintiffs consistently face extraordinary evidentiary challenges in proving discrimination because unlike a contract or patent dispute or even a tort claim where all parties can see the challenged documents or medical records, a discrimination plaintiff must offer evidence into the mind of an individual or possibly multiple individuals. The Supreme Court acknowledged this conundrum noting, "there will seldom be 'eyewitness' testimony as to the employer's mental processes." *United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 716 (1983). This Court has also acknowledged this challenge many times stating, "discrimination victims often come to the legal process without witnesses and with little direct evidence indicating the precise nature of the wrongs they have suffered." *Jackson v. University of Pittsburgh*, 826 F.2d 230, 236 (3d Cir. 1987). Cases charging discrimination are uniquely difficult to prove and often depend upon circumstantial evidence. *See*, *e.g.*, *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1081-82 (3d Cir. 1996); *Lockhart v. Westinghouse Credit Corp.*, 879 F.2d 43, 48 (3d Cir. 1989); *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893, 897 (3d Cir. 1987) (en banc); *Dillon v. Coles*, 746 F.2d 998, 1003 (3d Cir. 1984).

Thus, the Supreme Court created the familiar *McDonnell Douglas* framework to address the difficulty of obtaining direct evidence of a decision-maker's state of

mind or intent, and to highlight that circumstantial evidence is common and to be expected in discrimination cases. "The *McDonnell Douglas* method of establishing a prima facie case addresses two evidentiary problems common to most Title VII cases: (1) direct evidence of discriminatory intent will most likely be nonexistent or difficult to prove; and (2) the employer enjoys greater access to proof of its reasons for its own employment decisions." *Bell v. Birmingham Linen Serv.*, 715 F.2d 1552, 1556 (11th Cir. 1983). "The entire purpose of the *McDonnell Douglas* prima facie case is to compensate for the fact that direct evidence of intentional discrimination is hard to come by." *Price Waterhouse v. Hopkins*, 490 U.S. 228, 271 (1989) (O'Connor, J., concurring).

In the early 1990s, the circuits were split on whether additional evidence was required beyond the prima facie case and evidence of pretext. Then, in *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993), the Supreme Court held "[t]he factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reasons will *permit* the trier of fact to infer the ultimate fact of intentional discrimination," and "upon such rejection, 'no additional proof of discrimination is *required...*'" *Id.* at 514 (emphasis in original).

Following *Hicks*, this Court has consistently rejected the "pretext plus" standard, holding that a plaintiff need not offer additional evidence beyond the prima facie case and evidence of pretext. If the record reveals both evidence supporting a prima facie case and evidence that casts doubt on the employer's proffered reason, the factfinder can infer discrimination. Thus, no additional evidence is required to prevail at trial, and as such, must not be required on a motion for summary judgment. For example, in *Fuentes v. Perskie*, 32 F.3d 759 (3d Cir. 1994), this Court explicitly held, "if the plaintiff has pointed to evidence sufficiently to discredit the defendant's proffered reasons, to survive summary judgment the plaintiff need not also come forward with additional evidence of discrimination beyond his or her prima facie case." *Id.* at 764.

In *Waldron v. SL Industries*, 56 F.3d 491, 494-495 (3d Cir. 1995), this Court reaffirmed its commitment to *Hicks* and specifically declined the lower court's prediction to "side with those courts of appeals that had required plaintiffs at summary judgment to produce evidence of 'pretext-*plus*.'" The Court stated, "[c]ontrary to the district court's prediction, however, in [*Fuentes*], we joined those of our sister circuits who have read *Hicks* to require at summary judgment 'pretext-*only*.'" *Id.*

In 1996, the Court held in *Sheridan v. E.I. Dupont de Nemours & Co.*, 100 F.3d 1061, 1071 (3d Cir. 1996):

> In granting judgment as a matter of law for DuPont, the district court stated that "plaintiff would have to point to *some evidence*" that gender was the motive of those in the decision making process. It is evident that the district court believed that something more was required than was set forth in *Hicks* and our cases. Not only was such a requirement of additional evidence rejected in *Fuentes* where we stated that if the plaintiff has pointed to evidence sufficiently to discredit the defendant's proffered reasons, to survive summary judgment the plaintiff need not also come forward with additional evidence of discrimination beyond his or her prima facie case, but it is also inconsistent with the statement in *Hicks* that upon rejection of the defendants' proffered reasons for the action, no additional proof of discrimination is *required*.

(internal quotation marks and citations omitted).

In 2000, a unanimous Supreme Court of the United States issued *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133 (2000), which reaffirmed the holding in *Hicks* and dispelled the notion of "pretext plus." The *Reeves* Court clarified the role of pretext-only in circumstantial evidence cases. As Justice O'Connor stated, "[a] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Id.* at 148.

Post *Reeves*, this Court has continued to reaffirm *Fuentes* and to reject the pretext plus standard. *See, e.g., Abramson v. William Paterson College*, 260 F.3d 265, 283 (3d Cir. 2001); *Doe v. C.A.R.S. Protection Plus*, 527 F.3d 358, 370 (3d Cir. 2008); *Fasold v. Justice*, 409 F.3d 178, 186-87 (3d Cir. 2005) ("[the dissent] states that, under the majority's view, a plaintiff may go to trial 'without any affirmative

or direct evidence of discrimination whatsoever.' … That is not only the majority's view; it is also the view of the Supreme Court of the United States").

This Court's precedent for decades, following U.S. Supreme Court authority, makes it abundantly clear that plaintiffs can prove unlawful discrimination by establishing a prima facie case and pointing to evidence of pretext. No additional evidence is required. Here, however, the district erred when it held Moses to a higher standard than that required by the law of this Circuit and the Supreme Court.

For example, the district court recognized evidence in the record that Moses's supervisor, Brown, did not like him; harassed him; treated him less favorably than a white employee; and made at least one racist remark. *See* Appx.15-16, 23, 26. Nonetheless, the district court held, "while there is corroborating evidence that Brown may not have liked Moses, nothing in the record apart from Moses's own testimony demonstrates that Brown was *racially* biased towards him." Appx.23 at n.14 (emphasis in original). But Brown's attitude toward Moses *is* evidence that Brown was racially biased towards him. Although the evidence of Brown's racist statements came from Moses's own testimony, that testimony must be accepted as true on a motion for summary judgment. *See Weldon v. Kraft, Inc.*, 896 F.2d 793, 800 (3d Cir. 1990) (rejecting argument that a plaintiff's "uncorroborated deposition testimony is insufficient to create a genuine issue on the question of discriminatory intent," and noting, [d]iscriminatory conduct is often subtle and difficult to prove …

the issue of pretext in this case turns largely on the credibility of the competing testimony").

Moreover, a white coworker, O'Neill, testified that Brown treated him better than he treated Moses. Appx.16. This, of course, is evidence of disparate treatment based on race. As such, the district court wrongly stated that the only evidence of racial bias came from Moses himself; rather, a third party witness outside the protected class confirmed the difference in treatment. Because Moses adduced enough evidence for the jury to conclude that Brown's less favorable treatment toward Moses was because of his race, the district court held Moses to too high of a standard in granting summary judgment.

Moreover, the district court failed to recognize that evidence of disparate treatment between white employees and Black employees is sufficient evidence of pretext to survive summary judgment. *See Fuentes*, 32 F.3d at 765 (holding evidence "that the employer treated other, similarly situated persons not of his protected class more favorably" is evidence of pretext). Here, USS claims to have fired Moses for causing a train derailment. But as the district court noted, in a two-year period, 25 train derailments occurred, yet only three white employees were disciplined at all, and no employees other than Moses had been fired. Appx.29. This evidence is certainly an example of "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reason[]" that

could cause a reasonable factfinder to find that reason unworthy of credence. *See Fuentes*, 32 F.3d at 765. By requiring more from Moses than evidence of less favorable treatment than white employees, the district court erred in requiring "pretext plus" from Moses.

**B. The District Court Erred in Rationing Evidence Between the Prima Facie Case Stage and the Pretext Stage.**

Evidence that supports the prima facie case under the *McDonnell Douglas* framework can also be used to support a finding that an employer's proffered non-discriminatory reason for an action was pretextual. *Doe*, 527 F.3d at 370 ("the *prima facie* case and pretext inquiries often overlap"); *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 186 (3d Cir. 2000) ("nothing about the *McDonnell Douglas* formula requires us to ration the evidence between one stage or the other"); *Jalil v. Avdel Corp.*, 873 F.2d 701, 709 n.6 (3d Cir. 1989) ("the *McDonnell Douglas* formula does not compartmentalize the evidence so as to limit its use to only one phase of the case") (internal quotation omitted). Nothing about the *McDonnell Douglas* burden shifting framework alters the fundamental rule that on a motion for summary judgment, the trial court must review the entire record and draw all reasonable inferences for the nonmoving party. *See Reeves*, 530 U.S. at 150-51. If the record could support a reasonable jury finding for the non-movant, it is the role of the jury,

and not the judge, to make credibility determinations, weigh evidence, and draw reasonable inferences from the evidence for the nonmoving party. *Id.*

Here, the district court erred in granting summary judgment to USS. In addition to improperly weighing the evidence, the district court simply failed to consider the same record evidence that it used to determine that Moses had established his prima facie case.

There are several pieces of evidence which the court relied on solely in determining that Moses successfully made out a prima facie case, but then discarded when assessing pretext. *See* Appx17-29. For example, four of Moses' six disciplinary actions in his last two years of employment were initiated by Brown and Williams, supervisors who made racist comments to Moses. Appx.15-16. As the district court noted, "Moses's termination was predicated, at least in part, on his 'lengthy discipline record,' a record which Brown and Williams participated in developing." *Id.* at 16. These same supervisors made derogatory references to Black people, such as Brown saying to a Black employee, "**if a Black guy can't go get water, what is he good for?**" and Williams saying he moved to a neighborhood with **"less Blacks."** Appx.15 at n.9.

After correctly identifying this evidence as relevant to racial bias, the district court inexplicably failed to consider it as evidence that "discrimination was more

likely than not a motivating factor or determinative cause of the adverse employment action." *See Fuentes*, 32 F.3d at 764. After first noting at the prima facie stage that Moses's termination was predicated on his disciplinary history and that discipline could have been motivated by his race, the district court then held that same disciplinary history against him at the pretext stage. Specifically, the court held that white comparators who were not fired for train derailments were not similarly-situated to Moses because they did not have the same disciplinary history. Appx.29. But as the district court apparently understood at the prima facie case stage, Moses could have had a more significant disciplinary history than white coworkers precisely *because* of his race. That evidence does not become any less probative just because the court already considered it at the prima facie stage.

To the contrary, Moses's earlier discipline by biased supervisors is evidence that but for his race, he would not have been fired. If a factor was "the straw that broke the camel's back," then but-for causation has been established. *Burrage v. United States,* 571 U.S. 204, 211 (2014). "Often, events have multiple but-for causes." *Bostock v. Clayton County, Ga.*, 590 U.S. 644, 656 (2020). The "adoption of the traditional but-for causation standard means a ***defendant cannot avoid liability just by citing some other factor that contributed to its challenged employment decision***. So long as the plaintiff's sex [or race] was ***one*** but-for cause

of that decision, that is enough to trigger the law." *Id.* (emphasis added). But-for causation "is established whenever a particular outcome would not have happened 'but for' the purported cause. In other words, a but-for test directs us to change one thing at a time and see if the outcome changes. If it does, we have found a but-for cause." *Id.*

Here, the district court agreed that if Moses's disciplinary history were changed, that would have changed the outcome of his termination, just as it had for all the white employees who were not fired for train derailments. *See* Appx.16, 29. This establishes that each prior discipline was a necessary, but not sufficient, cause of the termination. If any or all of those disciplines were the result of racial bias, then Moses's race was a but-for cause of his termination. The district court erred in attributing this evidence to only be relevant at the prima facie case stage, when it also should have been considered at the pretext stage.

Likewise, the district court noted that during a disciplinary hearing after a confrontation between Moses and Brown, Moses told USS' labor relations representative that he felt he was subject to racial harassment from Brown. Appx16. The company did not investigate Moses's complaint despite a policy of conducting investigations into allegations of discriminatory harassment. *Id.* While the district court considered this evidence as relevant to the prima facie inquiry, it never mentioned this non-functional harassment-reporting policy again over the course of

concluding that Moses failed to offer enough evidence to establish pretext. *See* Appx17-29. However, evidence that an employer failed to follow a policy designed to prevent discrimination is relevant to discriminatory intent. *See Antol v. Perry*, 82 F.3d 1291, 1301 (3d Cir. 1996).

The law is clear that there are no barriers to considering evidence that established the prima facie case when assessing if the plaintiff has put forth a showing of pretext; in fact, the entire record is to be considered in both assessments. This evidence that Defendant's policy of investigating all complaints of racial harassment was ignored when Moses reported his issue directly to one of Defendant's labor relations representatives does not only allow for an inference that Brown himself racially harassed Moses, but also hints at a broader problem of racial harassment and discrimination that is simply papered over by an inoperative anti-harassment policy. The court did not even reckon with this evidence; instead, it conducted its pretext analysis under both prongs of *Fuentes* by picking and choosing from the record, and failing to make inferences in Moses' favor as the non-moving party.

The court's failure to consider the full record denied Moses the right to present his case to a jury. The record evidence, when viewed in the light most favorable to Moses, which would readily allow for a reasonable factfinder to find that the USS'

reason for termination was pretextual. The district court found value in this evidence when it came to determining that Moses made out a prima facie case, but cabined its use, and did not even consider it in determining pretext. Accordingly, by improperly rationing evidence between the prima facie and pretext stages, the district court committed reversible error, and the case should be reversed and remanded.

## C. The District Court Erred in Relying on the Opinions of Coworkers Regarding Discriminatory Motive.

In addition to its improper determination as to the weight of Moses's coworkers' testimony of Brown's treatment of Moses, the district court has made two specific errors in what it took away from that testimony. First, it erred in concluding that since one of the coworkers, Carter, is also a Black employee of Defendant, the fact that he did *not* experience harassment from Brown serves as conclusive evidence that the harassment that Moses experienced *also* was not based on his race. Second, it erred in giving weight to the coworkers' subjective beliefs as to Brown's motivations.

### 1. An employer does not have to discriminate against all employees of a protected class to discriminate against a single employee.

Antidiscrimination statutes protect *individuals* from discrimination. *See City of Los Angeles, Dept. of Water and Power v. Manhart*, 435 U.S. 702, 708 (1978) (Title VII's "focus on the individual is unambiguous"); 42 U.S.C. § 1981 (providing

"all persons within the jurisdiction of the United States" the right to make and enforce contracts as is enjoyed by white citizens); 43 Pa. Stat. § 955(a) (protecting "any individual" from race discrimination in employment). This focus on an individual's experience of discrimination holds true even where other members of that class may not have suffered any adverse action. *Connecticut v. Teal*, 457 U.S. 440, 455 (1982). "[A]n employer's treatment of other members of the plaintiffs' group can be of little comfort to victims of . . . discrimination." *Id.* (internal quotation omitted). Plaintiffs seeking relief under Section 1981 bear the burden of "identify[ing] injuries flowing from a racially motivated breach of their own contractual relationship, not of someone else's." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 480 (2006).

As this Court has held, "clearly, an employer does not have to discriminate against all members of a class to illegally discriminate against a given member of that class." *Goosby v. Johnson & Johnson Medical Inc.*, 228 F.3d 313, 321 (3d Cir. 2000). On a summary judgment record, the fact an employer retains some members of the plaintiff's protected class "proves nothing." *Marzano v. Computer Science Corp.*, 91 F.3d 497, 508-509, n. 4. (3d Cir. 1996).

Here, it provides "little comfort" to Moses if his former supervisor, Brown, did not racially harass all Black employees of Defendant. Nevertheless, the district

court seems to have found one employee's opinion about Brown's motives to be compelling proof that Brown's animus towards Moses was not racially motivated. Appx27. Specifically, Moses' Black coworker, Carter, believed that certain bosses "were just assholes to everybody." *Id.* at 26. The court treated this testimony as probative of a lack of racial animus towards Moses. At the same time, the district court ignored evidence from a white coworker, O'Neill, who confirmed that Brown harassed Moses, "but made no mention of race." *Id.* Simply put, none of this relates to Moses's claim that he personally experienced racial discrimination. The law is clear that the focus remains on an individual's experience of discrimination on the basis of a protected class, and a plaintiff can sustain a claim even where some coworkers of that same class are fortunate enough to escape the ire of a supervisor with discriminatory animus.

This is not to say that evidence of treatment of other employees, whether of the same or a different class, and whether positive or negative, can never be relevant at trial. Indeed, in *Ansell v. Green Acres Contracting Co., Inc.,* 347 F.3d 515 (3d Cir. 2003), this Court held that evidence of an employer's conduct towards other employees has long been held relevant and admissible to show that an employer's proffered justification is pretext, just as evidence that the employer treated protected employees favorably is admissible to negate discriminatory intent. But that does not

mean on a summary judgement record, a district court may weigh evidence of non-discrimination against evidence of discrimination and decide which should be credited.

The district court's approach here sets out on a path at odds with decades of precedent. The law provides that an individual that suffers an adverse employment action as a result of discriminatory animus targeted towards them can seek relief. The district court paints an alternative picture, where a Defendant employer can prevail as a matter of law in a case alleging discrimination against one employee by pointing to the treatment of an entirely different employee. If this Court endorses the district court's rationale, it would be acting contrary to the purpose of Section 1981 and the PHRA, and contrary to the summary judgment standard of viewing the evidence in the light most favorable to the non-moving party.

## 2. An individual's opinion about an employer's motive is to be given little, if any, weight.

Subjective beliefs about whether an employer acted with a discriminatory animus are not afforded much – if any – weight in determining if that employer acted with such animus. Courts routinely discount the probative value of a plaintiff's own subjective belief that they experienced discrimination. *See Jones v. School Dist. of Philadelphia*, 198 F.3d 403, 414 (3d Cir. 1999) (finding that a teacher's subjective beliefs about discrimination which were not substantiated with more concrete

evidence of his employer's motivations did not allow him to survive summary judgment). But the lack of weight given to subjective beliefs about discriminatory animus also cuts the other way. An employer-defendant also cannot use an employee's subjective belief that the employer *lacked* discriminatory animus to show that they in fact lacked such animus. *Olson v. General Elec. Astrospace*, 101 F.3d 947, 955 (3d Cir. 1996); *see also Marra v. Philadelphia Housing Authority*, 497 F.3d 286, 307-08 (3d Cir. 2007)(plaintiff's belief that defendant did not retaliate against him did not "undercut a finding of pretext").

Despite this general caution that subjective beliefs in an employer's discriminatory animus – or lack thereof – are not strong evidence, the district court readily accepted the subjective beliefs of Moses' coworkers that the animus which Brown directed at Moses was not racially motivated. However, without some concrete evidence to support it, an individual's subjective belief about an employer or supervisor's racial animus, or lack thereof, simply cannot support a final determination of whether such racial animus motivated an employment decision.

The court took notice of Carter's testimony that he didn't see Brown's harassment of Moses as having a racial motivation. Appx26. The court also found it notable that a statement from a white coworker, O'Neill, did not explicitly reference race as the reason that Brown harassed Moses. Appx26-27. From evidence that at

least two of Moses's coworkers witnessed Moses being harassed by Brown, the district court reached the takeaway that this harassment could not have been due to Moses' race. The district court found that this harassment was not racial in nature from Carter's subjective belief, and from what the court simply inferred about O'Neill's subjective belief to be on the basis that O'Neill did not use the word "race" in describing Brown's harassment of Moses. At best, the court weighed evidence to reach one conclusion among many that a jury could have reached. At worst, the court relied upon evidence that should not even be considered by the jury *at all*. Either way, the district court erred in granting summary judgment based on the opinion of one coworker, and the lack of another coworker's explicit reference to race as a motive for disparate treatment.

Affirming summary judgment on these grounds would open the floodgates to many employers offering the subjective opinions of other employees as evidence of nondiscrimination, and would substitute the jury's role with the opinion of lay witnesses about the cause of an adverse employment action. Thus, employees in addition to just Moses would be harmed by such a decision.

## IV. CONCLUSION

For the foregoing reasons, the district court erred in granting summary judgment against Moses. As such, *Amici* urge this Court to reverse the district court's judgment in favor of USS, and remand the case for further proceedings. Should this Court affirm the district court's grant of summary judgment, then *Amici* request that this Court correct the errors identified herein, so that future cases do not rely on those errors.

Respectfully submitted,

**ELZER LAW FIRM, LLC**

*/s/ Christine T. Elzer*
Christine T. Elzer
Pa. I.D. No. 208157
960 Penn Avenue
Suite 1001
Pittsburgh, PA 15222
(412) 230-8436
celzer@elzerlaw.com

Attorney for *Amici Curiae*
NELA, WPELA, and NELA-EPa

## Certification of Bar Membership

I certify that I am a member of the Bar of the U.S. Court of Appeals for the Third Circuit.

/s/ Christine T. Elzer
Christine T. Elzer

## Certificate of Compliance with Fed. R. App. P. 32(g)

This Brief complies with the type-volume limitation of Fed. R. App. P. 32(g) because it contains 4,879 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This Brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point font, Times New Roman.

/s/ Christine T. Elzer
Christine T. Elzer

## Certificate of Virus Scan

I hereby certify a virus scan was performed on this Brief prior to electronic filing using Microsoft Defender virus software.

/s/ Christine T. Elzer
Christine T. Elzer


## Certificate of Identical Copies

I hereby certify the text of the electronic brief and the hard copies are identical.

/s/ Christine T. Elzer
Christine T. Elzer

## Certificate of Service

I, hereby certify that on this 13th day of March, 2024, a true and correct copy of the foregoing [proposed] *Brief of Amici Curiae National Employment Lawyers Association; Western Pennsylvania Employment Lawyers Association; and NELA-Eastern Pennsylvania*, was electronically filed with the Court, with a copy served upon the following counsel via ECF:

Bruce C. Fox
bruce.fox@obermayer.com
Andrew J. Horowitz
andrew.horowitz@obermayer.com
Hugh T. McKeegan
hugh.mckeegan@obermayer.com
Obermayer Rebmann Maxwell & Hippel LLP

Attorneys for Appellant

Marla N. Presley
Marla.Presley@jacksonlewis.com
Laura C. Bunting
Laura.Bunting@jacksonlewis.com
Jackson Lewis, P.C.

Attorneys for Appellee

/s/ Christine T. Elzer
Christine T. Elzer